IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SENECA RESOURCES COMPANY, LLC, | ) |
|            Plaintiff | ) ) ) Docket No. 2:23-cv-1194 |
| vs. | ) ) Civil Action |
| CHAMPIONX, LLC, | ) ) **Jury Trial Demanded** |
|            Defendant | ) ) |

## COMPLAINT

SENECA RESOURCES COMPANY, LLC (hereafter, "Seneca"), by and through its counsel, Christopher J. Sinnott of Marnen Mioduszewski Bordonaro Wagner & Sinnott, LLC, files the following Complaint against ChampionX, LLC (hereafter, "Champion").

**I.  INTRODUCTION**

1.  Two of Seneca's natural gas wells in Middlebury Township, Tioga County, Pennsylvania, were damaged by chemicals intended to eliminate iron carbonate and iron sulfide deposits from the inner surface of the wells' production tubing.  ChampionX recommended the chemicals and designed the application protocol per the terms of its contract with Seneca.  Seneca files this action to recover its costs to repair the damage caused by ChampionX's breach of contract.

**II.  THE PARTIES**

2.  Seneca Resources Company, LLC (hereafter, "Seneca") is a Pennsylvania limited liability company whose principal place of business is in Houston, Texas, at 1201 Louisiana Street, Suite 2600.  Seneca has regional offices in Cranberry Township, Pennsylvania, at 2000 Westinghouse Drive, Suite 400.

3.  Seneca is an oil and gas field exploration and production company.

4. Champion is a Delaware limited liability company whose principal place of business is in Sugar Land, Texas, at 11177 South Stadium Drive. Champion is registered in Pennsylvania as a Foreign Limited Liability Company and has offices in Hughesville, Pennsylvania, at 356 Boak Avenue.

5. Champion represents to the consuming public that it is a global leader in midstream oilfield technology solutions, chemistry programs, and services.

### III. JURISDICTION & VENUE

6. Jurisdiction is proper in this District Court under 28 U.S.C. § 1332(a)(1) because Seneca and Champion are citizens of different states, and Seneca's damages exceed $75,000 exclusive of interest and costs.

7. Venue is proper in this District Court under 28 U.S.C. § 1391(b)(1) and (2) and § 1391(d).

### IV. MATERIAL FACTS

#### A. Seneca's Well Site

8. Seneca owns, operates, and maintains a natural gas well site in Middlebury Township, Tioga County, Pennsylvania, that's commonly known as the Fuller 826N Pad.

9. The Fuller 826N Pad includes four Utica Shale unconventional gas wells that Seneca identifies as wells 22H, 24H, 26H, and 28H (hereafter, collectively, the "Fuller Wells").

10. The Fuller Wells and their production equipment were operational and in good working order before the events that gave rise to the claims Seneca states in this Complaint.

#### B. The Seneca-Champion Contract

##### 1. The Master Service Agreement

11. Seneca and Champion are parties to a Master Service Agreement (hereafter, the "MSA") dated May 2, 2016, and amended on August 18, 2016, April 16, 2020, March 15, 2022,

and November 30, 2022.  Seneca has attached copies of the MSA and its August 2016 and April 2020 amendments as Exhibits A through C, respectively.

12. The MSA establishes various terms and conditions that apply to all contracts for the purchase of goods and services by Seneca from Champion.

13. Through Section 5 of the MSA, Champion warrants that:

   a. It is qualified to perform the services purchased by Seneca and will perform them in a safe and workmanlike manner and according to the accepted standards of its profession.

   b. The persons performing the services have the requisite training and expertise needed to fully and satisfactorily complete their obligations to Seneca.

   c. It would pay for direct and reasonable costs incurred by Seneca due to its reliance on nonconforming services.

14. Section 7 of the MSA requires Champion to cure any defective performance and compensate Seneca for costs Seneca incurs as a result of Champion's breach.

15. Through Section 12 of the MSA, Champion agrees to protect, indemnify, hold harmless, and defend Seneca against all losses, costs, and damages (including attorney's fees) caused by damage to Seneca' 's property resulting from Champion's breach of contract.

   **2.   *Champion's Work Order Under the MSA to Chemically Treat the Fuller Wells***

16. In or around November 2020, Seneca solicited a bid from Champion to chemically treat iron carbonate and iron sulfide deposits (hereafter, the "scaling") built up on the inner surface of the Fuller Wells' 2-3/8" production tubing.

17. Pursuant to Seneca's solicitation, Champion was to identify the nature and extent of the scaling and establish a chemical treatment protocol to eliminate the deposits.

18. On or about November 20, 2020, Champion provided Seneca with a written proposal identifying three possible treatment options for the scaling:

      a.    <u>Treatment Protocol # 1</u>:  Injection of peracetic acid (BIOC16734A), corrosion inhibitor with iron dissolver (CORR11540W), and water, all at Champion recommended levels, followed by a 12-hour shut-in.

      b.    <u>Treatment Protocol # 2</u>:  Injection of hydrochloric acid (SCAL16018A), corrosion inhibitor with iron dissolver (CORR11540W), foaming agent (FOAM20090A), hydrogen sulfide scavenger (HSCV10006A), and water, all at Champion recommended levels, followed by a 12-hour shut-in.

      c.    <u>Treatment Protocol # 3</u>:  Injection of hydrochloric acid (SCAL16018A), corrosion inhibitor with iron dissolver (CORR11540W), peracetic acid (BIOC16734A), hydrogen sulfide scavenger (HSCV10006A), a foaming agent (FOAM20090A), and water, all at Champion recommended levels, followed by a 12-hour shut-in.

A copy of Champion's written recommendation is attached as Exhibit F.

19.    After discussions with Champion about each protocol's benefits, limitations, and risks, and based on Champion's representations and recommendations, Seneca selected Treatment Protocol # 1 for Fuller Wells 22H and 28H and Treatment Protocol # 3 for Fuller Well 24H.

20.    Seneca relied on Champion's expertise, experience, and recommendations when selecting the Treatment Protocols for the Fuller Wells.

**C.    Damage to the Fuller Wells Caused by the Chemical Treatment**

21.    As the Champion treatment protocols directed, Seneca injected the Fuller Wells with the recommended chemicals on December 3, 2020, and then shut them in for 12 hours.

22.    Seneca tried bringing Well 24H online for production after the 12-hour shut-in period expired.  However, when it opened the Well, excess foam and solids created by the chemicals' interaction with the scaling returned to the surface and contaminated the Fuller Pad's dehydration unit.

23. Seneca immediately shut Fuller Well 24H back in and notified Champion of the foam/solid return and that it intended to keep the three Wells shut in until the dehydration unit was repaired.

24. Champion failed to warn Seneca of the risks of keeping the Fuller Wells shut-in longer than the planned 12-hour period.

25. Seneca kept the Fuller Wells shut-in for 72 additional hours while the dehydration unit was repaired.

26. Seneca tried to return Wells 22H and 28H to production on December 7, 2020, but experienced the following:

   a. A detonation of the hydrocarbons inside Well 28H's tubing string that was fueled and initiated by the degradation of the scale-treating chemicals over the extended shut-in period.

   b. A similar hydrocarbon detonation inside Well 22H's tubing string, but through the use of a pressure control clutch, Seneca prevented the reaction from progressing past combustion.

**D. Seneca's Damages Caused by the Thermal Reaction**

27. The excessive heat and/or pressure damaged some of Well 22H's components. Seneca was required to perform the following work to return the Well to service:

   - Replace all piping and components downstream of the separator and up to the sales line tie-in, including piping spools, meter run, ball valve, check valve, and various blowoff valves.

28. The excessive heat and/or pressure caused some of Well 28H's components to reach their yield point and deform. Seneca was required to perform the following work to return the Well to service:

   - Replace the upper master valve;
   - Replace the emergency shutdown valve;
   - Replace the tubing wing valve;
   - Replace the flowline piping from the wellhead to the heater inlet;
   - Replace the gate valve at the heater inlet;

- Replace the intermitter valve at the heater inlet;
- Install a new flowline into a spare coil on the heater; and
- Reroute to a different coil on the heater to put a spare separator into service.

29. The excessive heat and/or pressure also caused Well 28H's production tubing to separate from the wellhead system, requiring Seneca to fish all the production tubing from the Well and replace it with 447 new joints.

30. Seneca's expenditures to complete the work required to address the foam return on Well 24H and to return Wells 22H and 28H to production totaled $580,237.14.

## V. SENECA'S CAUSE OF ACTION AGAINST CHAMPION

### A. For Breach of Contract

31. Seneca incorporates the averments contained in paragraphs 1 through 33 of this Complaint.

32. The Seneca-Champion MSA and the Seneca-Champion work order for the chemical treatment of the Fuller Wells obligated Champion to make recommendations and provide services that were good and workmanlike and met all standards in their industry.

33. Champion materially breached the Seneca-Champion MSA and the Seneca-Champion work order for the chemical treatment of the Fuller Wells by:

    a. Relying primarily on its experience concerning gas well scaling in the geographic region rather than performing well-specific due diligence to determine the chemical composition of the scaling for the Fuller Wells;

    b. Failing to identify and recommend appropriate chemicals to eliminate the scaling safely;

    c. Failing to scope the appropriate amount of chemicals to apply to eliminate the scaling safely;

    d. Failing to develop an appropriate chemical application protocol that would result in the safe elimination of the scaling;

    e. Failing to warn Seneca that the prolonged shut-in would cause excess oxygen to build up in the well bores;

      f.    Failing to warn Seneca that a thermal reaction could occur when excess oxygen in the well bores reacted with the iron sulfide deposits; and

      g.    Failing to reimburse Seneca its costs and expenses related to losses and damages to its property resulting from Champion's breaches of its warranty under the Seneca-Champion MSA.

34. Champion's breach of the Seneca-Champion MSA and the Seneca-Champion contract proximately caused damages to Seneca in the amount of $580,237.14, and Seneca demands that amount as damages.

35. Champion's breach of the Seneca-Champion MSA and the Seneca-Champion contract caused Seneca to incur reasonable attorneys fees and costs incurred by Seneca to enforce Champion's indemnity obligations, and Seneca demands reimbursement of those amounts as damages.

WHEREFORE, the plaintiff, Seneca Resources Company, LLC, respectfully demands the entry of a judgment in its favor in an amount exceeding $75,000, together with interest and costs of suit.

                                                    */s/ Christopher J. Sinnott*
                                                    Christopher J. Sinnott
                                                    Pa. Id. No. 69402
                                                    MARNEN MIODUSZEWSKI BORDONARO WAGNER & SINNOTT, LLC
                                                    516 West Tenth Street
                                                    Erie, PA  16502-1352
                                                    Telephone: (814) 874-3460
                                                    Fax: (814) 874-3476
                                                    Email: csinnott@mmbwslaw.com

                                                    Attorneys for the plaintiff,
                                                    Seneca Resources, LLC